# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-24-00534-CR

**Steven Trejo, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE 421ST DISTRICT COURT OF CALDWELL COUNTY
### NO. 23-034, THE HONORABLE CHRIS SCHNEIDER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Steven Trejo was charged with the offense of evading arrest or detention with a vehicle. *See* Tex. Penal Code § 38.04. The indictment contained two enhancement paragraphs alleging that he had previously been sequentially convicted of the felony offenses of aggravated assault and intoxication assault, and he stipulated that he was convicted of those prior offenses. *See id.* §§ 12.42, 22.02, 49.07. The jury found him guilty, and he elected to have the trial court assess his punishment. The trial court sentenced him to 35 years' imprisonment. In one issue on appeal, he challenges the sufficiency of the evidence supporting his conviction. We will affirm the trial court's judgment of conviction.

## BACKGROUND

Around 8:30 p.m. on November 13, 2022, an individual called 911 to report that she saw a white truck driving in a "crazy" and "reckless[]" manner and explained that the truck

was "swerving in and out of traffic" and going "in and out of [its] lanes." The caller also specified where the truck was at the time of the call and provided the license plate number for the truck.

After receiving the information from dispatch, Officer Drew Lewis drove to where the 911 caller reported seeing the truck, but the truck was not there. Officer Lewis used the license plate number to locate the address of the truck's owner and drove to the owner's home. When he arrived, Officer Lewis did not see the truck and decided to drive through the neighborhood looking for it. He saw the truck being driven on a nearby road and followed it. After the truck stopped in front of a house, Officer Lewis parked his patrol car behind the truck. He activated his emergency lights, and a few seconds later, the truck drove off.

Officer Lewis followed the truck in his patrol car with the emergency lights on. While Officer Lewis was in pursuit, the truck turned left onto a nearby road without stopping at a stop sign and proceeded forward on that street. The truck's brake lights activated as it proceeded up a hill. At that point, the truck crashed into the guardrail at the center of a t-intersection. Approximately thirty seconds passed between Officer Lewis's activating his emergency lights and the truck's crashing into the guardrail.

Following the collision, the driver got out of the truck and went down into a nearby wooded area by a creek, and the passenger got out of the truck and stayed near the truck. Officer Lewis told other officers responding to the scene that the driver had gone into the wooded area, and Officer Lewis approached the passenger, placed him in handcuffs, and put him in the back of his patrol car. Officer Lewis then went into the creek to look for the driver.

Officer Andrew Sabatino also responded to the 911 call, and he went into the wooded area looking for the driver. Officer Sabatino heard movements in the creek and found

2

the driver "laying in the brush kind of like half in the water, half on the bank." Officer Sabatino repeatedly told the driver to place his hands in the air and to stop reaching inside his clothes or else the driver would be tazed or shot. The driver first put his hand in his pocket before ultimately complying with the command. Officer Lewis approached the driver from a different part of the creek and placed him in handcuffs after he put his hands in the air. The officers learned that the driver was Trejo, and Officer Sabatino transported Trejo to jail following his arrest. Trejo fell asleep in the back of the patrol car on the way to jail. When the officers searched the truck, they found open and unopened alcoholic beverages throughout the truck, and there was an open beer bottle on the floor of the driver's seat and a loaded pistol under the console between the driver's and passenger's seats.

Following his arrest, Trejo was charged with evading arrest or detention. During the trial, Officers Lewis and Sabatino testified regarding the events above, and the trial court admitted as exhibits a recording of the 911 call and footage from their body cameras and the cameras in their patrol cars. In addition to discussing the events summarized above, Officer Lewis testified that after pulling up behind the truck and activating his emergency lights, he got out of the car to make contact with the driver before the truck "took off." When asked why he activated his lights, Officer Lewis explained that he was performing "a traffic stop for a welfare concern." Further, he described the truck as moving away from him "at a high rate of speed" and said the vehicle was "travelling too fast to make the turn, locked up its brakes[,] and then hit the guardrail." Moreover, he recalled that Trejo "hop[ped] over the guardrail and kind of f[e]ll through the brush into the creek below" and disappeared into the wooded area. Officer Sabatino testified that he smelled "a strong odor of metabolized alcoholic beverage emitting from [Trejo's] breath" and that he believed Trejo was under the influence and possibly intoxicated.

3

After considering the evidence presented at trial, the jury found Trejo guilty of evading arrest or detention. Trejo appeals his conviction.

## STANDARD OF REVIEW

On appeal, Trejo challenges the sufficiency of the evidence supporting his conviction. "Evidence is sufficient to support a criminal conviction if a rational jury could find each essential element of the offense beyond a reasonable doubt." *Stahmann v. State*, 602 S.W.3d 573, 577 (Tex. Crim. App. 2020) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). In making this determination, "[w]e view the evidence in the light most favorable to the verdict and consider all of the admitted evidence, regardless of whether it was properly admitted." *Id.* "The jury is the sole judge of credibility and weight to be attached to the testimony of the witnesses." *Id.* "Juries can draw reasonable inferences from the evidence so long as each inference is supported by the evidence produced at trial," *id.*, and are "free to apply common sense, knowledge, and experience gained in the ordinary affairs of life in drawing reasonable inferences from the evidence," *Eustis v. State*, 191 S.W.3d 879, 884 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd). "When the record supports conflicting inferences, we presume that the jury resolved the conflicts in favor of the verdict and defer to that determination." *Merritt v. State*, 368 S.W.3d 516, 525-26 (Tex. Crim. App. 2012).

Appellate courts must "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007). They must also bear in mind that "direct and circumstantial evidence are treated equally" and that "[c]ircumstantial evidence is as probative as direct evidence in establishing the guilt of an

4

actor" and "can be sufficient" on its own "to establish guilt." *Kiffe v. State*, 361 S.W.3d 104, 108 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd). The evidence is legally insufficient if "the record contains no evidence, or merely a 'modicum' of evidence, probative of an element of the offense" or if "the evidence conclusively establishes a reasonable doubt." *Id.* at 107 (quoting *Jackson*, 443 U.S. at 320).

## DISCUSSION

In his issue on appeal, Trejo contends that the evidence was insufficient to support his conviction because, according to him, the State "failed to prove beyond a reasonable doubt that [he] had knowledge that he was the subject of an attempted arrest or detention at the time he committed the alleged acts of evading in a vehicle." As support, Trejo points to portions of Officer Lewis's testimony in which he explained that he activated his emergency lights because he was performing "essentially a traffic stop for a welfare concern" and notes that Officer Lewis "did not testify that he attempted to 'detain' or 'arrest,'" that he observed Trejo engage in any illegal behavior, or that he had a warrant for Trejo's arrest. Further, Trejo suggests that there was no evidence suggesting that his "alarm bells" had been "raise[d]" to the possibility that Officer Lewis had caught him "red-handed" committing a traffic offense and would arrest or detain him or was displaying a show of authority because Officer Lewis did not "aggressively close[] the gap between the two vehicles."

Although Trejo acknowledges that Officer Lewis activated his emergency lights, Trejo asserts that nothing in the officer's testimony or the recordings indicates that the officer "successfully 'made contact with'" Trejo before the truck drove away. Even though Trejo agrees that the recordings show that the truck "accelerates towards the end of the block" after Officer

5

Lewis activated his emergency lights, Trejo emphasizes that the evidence does not establish that Officer Lewis ever activated his siren or used his public address system to provide commands to Trejo before the crash that would have demonstrated the officer's intent to arrest or detain him. He suggests that a "split second display of red and blue lights, standing alone," was insufficient to establish a show of authority and instill in him an awareness that he was going to be arrested or detained. Further, he asserts that there was no evidence that he acknowledged Officer Lewis's presence other than his decision to resume driving after the emergency lights were activated. For these reasons, Trejo insists that there was insufficient evidence to establish that he "knew the officer was attempting to arrest or detain him."

Under the Penal Code, an individual commits the offense of evading arrest or detention with a vehicle "if he intentionally flees from a person he knows is a peace officer . . . attempting lawfully to arrest or detain him" and if the person "uses a vehicle . . . while the actor is in flight." Tex. Penal Code § 38.04. A person commits that offense when he knows a police officer is attempting to arrest or detain him "but nevertheless refuses to yield to a police show of authority." *Thompson v. State*, 426 S.W.3d 206, 209 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd). "'[F]leeing' is 'anything less than prompt compliance with an officer's direction to stop.'" *Lopez v. State*, 415 S.W.3d 495, 497 (Tex. App.—San Antonio 2013, no pet.) (quoting *Horne v. State*, 228 S.W.3d 442, 446 (Tex. App.—Texarkana 2007, no pet.)). In presenting his sufficiency challenge, Trejo does not attack the sufficiency of the evidence regarding all the statutory elements and instead, as set out above, limits his challenge to the evidence regarding whether he knew that he was the subject of an attempted arrest or detention when he committed the alleged act of evading in a vehicle. "A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is

6

aware of the nature of his conduct or that the circumstances exist." Tex. Penal Code § 6.03(b); *see also Riggs v. State*, 482 S.W.3d 270, 275 (Tex. App.—Waco 2015, pet. ref'd) (setting out conduct elements for evading arrest or detention).

As an initial matter, we note that to establish the offense of evading arrest or detention, there does not need to be evidence that the defendant knew "that the law enforcement officer [wa]s attempting to *lawfully* arrest or detain him"; instead, the evidence "must simply" show that the defendant "kn[e]w the detaining or arresting person [wa]s a peace officer." *Nicholson v. State*, 682 S.W.3d 238, 242 (Tex. Crim. App. 2024). Further, although Trejo points to cases in which courts have found sufficient evidence to support a conviction for evading arrest or detention where police officers activated their emergency lights and also used sirens or public address systems, *see Thompson*, 426 S.W.3d at 209; *Horne*, 228 S.W.3d at 444-46; *Hobyl v. State*, 152 S.W.3d 624, 627-28 (Tex. App.—Houston [1st Dist.] 2004, pet. dism'd, improvidently granted), nothing in the language of those cases suggests that the use of a siren or a public address system is necessary to establish an arrest or detention. On the contrary, as our sister court explained, "use of lights and sirens is not the only method for a peace officer to assert the authority of law." *Duvall v. State*, 367 S.W.3d 509, 513 (Tex. App.—Texarkana 2012, pet. ref'd); *see also Lopez v. State*, No. 04-22-00447-CR, 2023 WL 5068535, at *2 (Tex. App.—San Antonio Aug. 9, 2023, no pet.) (mem. op., not designated for publication) (explaining that evading arrest statute does not require police officer to keep emergency lights flashing and siren on for any particular length of time and instead "requires only evidence from which a reasonable factfinder could infer that a person knew an officer was attempting to arrest or detain him and fled from the officer's lawful attempt to arrest or detain"); *Warren v. State*, No. 14-15-00580-CR, 2016 WL 3648714, at *3 (Tex. App.—Houston [14th Dist.] July 7, 2016, no pet.) (mem.

7

op., not designated for publication) (finding evidence sufficient even though officer did not activate his siren but did activate his emergency lights).

In this case, Officer Lewis had been informed that a white truck was being driven in a reckless manner, and after the officer located the truck, he parked his police car behind the truck Trejo had been driving while the truck was stopped on a street. *See Smith v. State*, 483 S.W.3d 648, 655 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (noting that officers received information over dispatch and that police saw defendant driving car matching description given by dispatch). There were no cars between the truck and Officer Lewis's patrol car. *See Burgess v. State*, 448 S.W.3d 589, 596 (Tex. App.—Houston [14th Dist.] 2014, no pet.). Officer Lewis then activated his emergency lights, and these interactions were captured on the recordings admitted into evidence.

Although not captured on the recordings admitted as exhibits, Officer Lewis testified that that he got out of his patrol car after activating his emergency lights to approach the truck to make contact with the driver and perform a traffic stop, and other portions of the recordings showed that Officer Lewis was wearing his police uniform that night. *See Duran v. State*, No. 03-22-00166-CR, 2023 WL 4139385, at *2 (Tex. App.—Austin June 23, 2023, no pet.) (mem. op., not designated for publication) (noting that officer testified that he turned on emergency lights "and then walked toward Duran's vehicle while wearing his patrol uniform"); *Fisher v. State*, 481 S.W.3d 403, 407 (Tex. App.—Texarkana 2015, pet. ref'd) (explaining that "[a] traffic stop is a detention"); *see also Merritt*, 368 S.W.3d at 525-26 (explaining that appellate court presumes that jury resolved any conflict in evidence in favor of conviction). Shortly after Officer Lewis's emergency lights were activated, Trejo drove the truck quickly away from the patrol car and ran a stop sign. *See Reyes v. State*, 465 S.W.3d 801, 806 (Tex.

App.—Eastland 2015, pet. ref'd) (noting that defendant accelerated when officer "turned on his flashing lights" and "ran a stop sign").

Further, once the truck took off, Officer Lewis followed in his patrol car with his emergency lights activated, and there were no cars between Officer's Lewis's patrol car and the truck. *See id.* Additionally, after speeding away from Officer Lewis, Trejo was not able to safely execute a turn and crashed into a guardrail at a t-intersection. *See Burgess*, 448 S.W.3d at 596 (noting that defendant led officer on "high-speed chase"). Moreover, following the crash, Trejo dropped down into a wooded creek that obscured his location from the responding officers and did not communicate with the officers until one of the responding officers found him. *See Reyes*, 465 S.W.3d at 806 ("Appellant's actions and the surrounding circumstances sufficiently proved that Appellant intentionally fled in a vehicle from Officer Guerra, who he knew was attempting to lawfully arrest or detain him."); *see also Hedrick v. State*, 473 S.W.3d 824, 830, 831 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (explaining that evidence showing "[a] consciousness of guilt is perhaps one of the strongest kinds of evidence of guilt").

From this evidence, "the jury could have rationally inferred" that Trejo "recognized Officer [Lewis] as a police officer" and that Trejo fled from Officer Lewis knowing that the officer "intended to detain" Trejo. *Burgess*, 448 S.W.3d at 596; *see* Tex. Penal Code § 38.04; *see also Thompson*, 426 S.W.3d at 209 (determining that evidence was sufficient to support conviction where police officer was wearing uniform and signaled to defendant to stop, where defendant sped up, where police officer activated overhead lights and siren, where police officer pursued defendant, and where defendant sped up and did not pull over).

For these reasons, we overrule Trejo's issue on appeal.

9

## CONCLUSION

Having overruled Trejo's issue on appeal, we affirm the trial court's judgment of conviction.

_____

Karin Crump, Justice

Before Justices Triana, Theofanis, and Crump

Affirmed

Filed:   August 27, 2025

Do Not Publish